**CARL E. ROSTAD**
**RYAN G. WELDON**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**Email:     Carl.Rostad@usdoj.gov**
**            Ryan.Weldon@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 13-98-GF-BMM** |
| Plaintiff, | |
| vs. | |
| **SHAD JAMES HUSTON and K & N CONSULTING, LLC,** | **OFFER OF PROOF** |
| Defendants. | |

1

## INTRODUCTION

Shad James Huston and K & N Consulting, LLC, appear before the Court to enter a plea of Guilty to the charge contained in Count III of the Superseding Indictment, Theft from and Indian Tribal Organization and Aiding and Abetting the offense.

The United States, by and through its counsel, Carl E. Rostad and Ryan G. Weldon, Assistant U.S. Attorneys for the District of Montana, submits this Offer of Proof to provide the factual basis for the defendants' pleas.

## ELEMENTS

### Theft from an Indian Tribal Organization
### Title 18 U.S.C. § 1163

**First**, Shad Huston and K & N Consulting, LLC, aided and abetted the knowing conversion of monies, funds, or property by another person to his use or the use of another;

**Second**, the property taken belonged to the Chippewa Cree Tribe or any agency thereof, an Indian tribal organization, or which had been entrusted to the custody or care of an officer, employee, or agent of the Indian tribal organization; and,

**Third**, the property had value of $1000 or more.

//

//

//

## FACTUAL BACKGROUND

If this case went to trial in the United States District Court, the United States would prove the following:[1]

### I. THE CHIPPEWA CREE TRIBE AND THE INSURANCE MONEY

On June 15, 2010, flooding destroyed the Na-Toos Health Clinic, also known as the Rocky Boy's Health Clinic, a medical facility serving the Chippewa Cree tribal community. Between September 2010 and December 2012, the Chippewa Cree Tribe of Rocky Boy's Indian Reservation, received approximately $11.6 million in federal funding from the Department of Homeland Security through the Federal Emergency Management Agency (FEMA) to assist in the recovery from significant flood damage caused to the tribal community in the summer of 2010. The Tribe also collected approximately $25 million in insurance proceeds based on the loss of the Rocky Boy's Health Clinic. This money was placed in a separate tribal account and was controlled, in whole or in significant part, by members of an Insurance Recovery Team created by resolution of the

---

[1] The offer of proof does not encompass all of the proof that the United States would offer at trial but only the proof that would be necessary to support the elements of the charges to which the defendant is pleading guilty. The United States possesses, or may possess, other evidence which may be redundant to the evidence described below or otherwise unnecessary to the purposes of this stage of the proceeding. The United States possesses, or may possess, other evidence which will more fully inform the Court as to the appropriate sentence. Neither the Court nor the defendant should consider this pleading as inclusive of all evidence known to the government or a self-imposed limitation on the evidence it may use in the future for purposes other than to support the entry of plea.

Business Committee—Resolution 37-11—on May 9, 2011. The members of that Team were Bruce Sunchild, Theodore Whitford, Tony Belcourt, Tim Rosette, and Kimberly Traversie.

## II. THE PRINCIPALS

In 2005, the Tribe passed a resolution creating the Chippewa Cree Construction Corporation for the specific purpose of having the Tribe participate in the construction of the Rocky Boy's/NCMRWS Project.[2] When created, and during the period of the indictment, the Tribe hired Tony Belcourt as the Chief Executive Officer and Contracting Officer for the construction corporation.

Until 2009, Belcourt performed the services of CEO and Contracting Officer as an employee. In February of 2010, the Chippewa Cree Construction Corporation contracted with Ingen Enterprises for Belcourt's services and agreed to pay Belcourt, through Ingen Enterprises, approximately $150,000 per year. Ingen Enterprises was a business entity owned and controlled by Tony Belcourt and Dr. James H. Eastlick, Jr., then a clinical psychologist at the Rocky Boy's Health Clinic. In his capacity as CEO and Contracting Officer, Belcourt selected subcontractors for work on the project, negotiated contracts, and approved contract payments. Eastlick was also a 49% owner of Hunter Burns Construction, LLC, a

---

[2] NCMRWS stands for North Central Montana Regional Water System Project.

construction company doing business on the Rocky Boy's Indian Reservation, created in the summer of 2009. The Rocky Boy's/NCMRWS Project was awarded $20 million in American Recovery and Reinvestment Act (ARRA) funds in October of 2009.

In December of 2011, Bruce Sunchild was the Chairman of the Chippewa Cree Business Committee and, as noted, the Chairman of the Board of Directors of the Chippewa Cree Construction Corporation and the Insurance Recovery Team. He was also on several other boards governing tribal operations, including the Rocky Boy Health Board. John Chance Houle was the Vice Chairman of the Business Committee and also served on the Board of Directors for the Chippewa Cree Construction Corporation.

During the period of the indictment, Shad Huston of Havre controlled, either exclusively or jointly, the business affairs and financial accounts of K & N Consulting, TMP Services, Huston Leasing, Leon's Finance, Inc., Leon's Pawn and Rental, Inc., Wild Horse Ridge Enterprises, K Bar K Trucking, Havre Space Center, Drop-n-Go Playzone, Big Sky Pawn, and the business known as Leon's Buy and Sell. K & N Consulting, TMP Services, and the Havre Space Station were created during the time that the Tribe was awarding contracts funded by FEMA and insurance money for flood related projects.

In three of these companies—Big Sky Pawn, Leon's Finance, and Havre Space Station—ownership and control was shared with Dr. James H. Eastlick, Jr.

### III. THE MEETINGS AT LEON'S BUY AND SELL

The United States would call witnesses that would establish that Huston was part of a group that met periodically at Leon's Buy and Sell to devise methods and means to exploit tribal and federal contracts. Huston (who was nicknamed "Chumlee") [from a television program called *Pawnstars*], was joined at these meetings by Eastlick (nicknamed "Ronald McDonald"), Houle (nicknamed "G" or "Triple G") ["G" referring to Greed], another tribal official (nicknamed "Hamburglar"), and Belcourt (nicknamed "Tony the Tiger"). These men would discuss available contracts, how and to whom to award them, how large the contract would have to be to cover the kick-backs, and decide how the proceeds would be distributed. When a scheme had been decided upon, the illicit deal was referred to as a "Happy Meal."

Between May 2011 and November 2012, Huston, through TMP Services and K & N Consulting, received $1,249,410. In the three year period of 2010, 2011, and 2012, companies owned by or associated with Huston received $3.6 million in tribal contracts. Eastlick's Hunter Burns Construction received $2.4 million from the Rocky Boy's/NCMRWS Project, and hundreds of thousands of dollars more

from other tribal contracts—FEMA and insurance proceeds—involving the 2010 floods.

## IV. THE 2011 PAYMENTS PRIOR TO DECEMBER TRANSACTIONS

Tony Belcourt and the Chippewa Cree Construction Corporation awarded several contracts to Huston enterprises. Evidence indicates that TMP Services obtained a tribal contract utilizing FEMA disaster funds, and on May 20, 2011, received a contract payment in the amount of $66,670. Within a few weeks, in June 2011, although Huston had a number of operations in the business of loaning money, TMP Services provided a loan to Hailey Belcourt in the amount of $7,500. Hailey Belcourt negotiated this check into cash at Leon's Buy and Sell, another Huston business interest.

Belcourt approved another contract payment from the Chippewa Cree Construction Corporation—this one to K Bar K Trucking—on September 22, 2011, in the amount of $100,110 and then ten days later, on October 3, 2011, Huston wired $10,000 to Tony and Hailey Belcourt's personal account. At that time, the Belcourt's had overdrawn their bank account by $4,547.

On November 25, 2011, the Chippewa Cree Construction Corporation issued a $231,000 check to TMP Services. On that same day, TMP Services issued a

check to Hailey Belcourt for $5,000, which she deposited into her personal account.

## V. THE BELCOURT'S RANCHING OPERATION, A $250,000 OVERDRAFT, AND PAYMENTS FROM K & N CONSULTING.

In addition to his role at the Chippewa Cree Construction Corporation, and as the incident commander for the Tribe's response to the floods of 2010, Tony Belcourt and his wife, Hailey, operated a cattle ranch on the Rocky Boy's Indian Reservation.

In November and December of 2011, the Belcourts purchased a significant number of cattle from central Montana producers. By the middle of December, their checking account was overdrawn by more than $250,000.

On December 22, 2011, K & N Consulting received and deposited a cashier's check in the amount of $300,000 from the Chippewa Cree Tribe. An internal tribal document reflects that Tony Belcourt approved the disbursement for "claim prep" by K & N Consulting. Also signing the authorization were Bruce Sunchild, John Chance Houle, Theodore Whitford, and Tribal Secretary Janice Meyers. The funds were drawn on the Tribe's bank account utilized for the Insurance Fund settlement monies. No other supporting records or documents—such as invoices, itemized billing, receipts, pay requests, evidence of costs incurred, or disbursements made

for the work, or any other kind of standard supporting documentation—were found in a search of tribal records by employees of the Tribe. With the possible exception of the defendants, all parties to the transaction confirm that the $300,000 payment to K & N Consulting was not a legitimate obligation of the Tribe and designed primarily to provide $200,000 to Tony Belcourt.

K & N Consulting issued a $200,000 check from its business account to Tony Belcourt—noted as "consulting services" and dated December 20—which Belcourt deposited on December 23, the day following the tribal payment to K & N Consulting. On December 22, 2011, Huston also obtained a $100,000 cashier's check payable to Tony Belcourt from his checking account, which Belcourt also deposited into his personal checking account on December 23, 2011.

The $300,000 in payments made to Tony Belcourt were sufficient to cover the checks he had written for the cattle purchases, which had overdrawn his account.

From the remaining $100,000, of the $300,000 insurance check to K & N Consulting, Huston and K & N Consulting paid out an additional $57,800 to the benefit of the other three approving officials, including $24,977 (check # 8006) paid to Tilleman Motors to clear the title and transfer Belcourt's Chevrolet Suburban to Sunchild's daughter, Dawn Gamble, and $12,823 (check # 8008) to Tilleman Motors to pay the bill on repairs and maintenance for John Chance

Houle's vehicle. Also, there was a check payable to "Cash" in the amount of $20,000 (check # 8021) with the memo section notation "Mervin Whitford – on CCCC Rocky Boys Tribe." Mervin Whitford is the brother of Theodore Whitford. Huston and K & N Consulting retained the remaining $42,200.

## VI. THE DEFENDANT'S STATEMENT OF ACCOUNTABILITY

On August 18, 2014, Huston submitted a memorandum in support of his guilty plea that outlines facts from a separate transaction than the facts outlined above. This separate transaction involves a payment of $120,000 remitted to K & N Consulting from the CCT Roads Construction account on October 17, 2011, the same day that the K & N Consulting business account was created by the defendant. This payment was the first deposit into the K & N business account.

For purposes of the guilty plea by Huston and K & N Consulting, LLC, the United States accepts the defendants' recitation as true, and agrees that it provides a basis in fact, as required by Rule 11 of the Federal Rules of Criminal Procedure, for acceptance of the defendants' guilty pleas. All conduct—both that described in the government's account and that provided in the defendants' account—is, for the purposes of double jeopardy protections, covered by the defendants' guilty pleas.

> If, during the plea colloquy, the government's statement or the defendant's own version of the facts sets forth all elements and

conduct of the offense, admission to that conduct sufficiently establishes the defendant's understanding of the charge.

*United States v. Martinez-Martinez*, 69 F.3d 1215, 1220 (1st Cir. 1995); *see also* *United States v. Cazares*, 121 F.3d 1241, 1248 (9th Cir. 1997) (recognizing defendant may plead to certain facts that establish conviction).

DATED this 22nd day of August, 2014.

                MICHAEL W. COTTER
                United States Attorney

                */s/ Carl E. Rostad*
                CARL E. ROSTAD
                Assistant U.S. Attorney

                */s/ Ryan G. Weldon*
                RYAN G. WELDON
                Assistant U.S. Attorney