CARL E. ROSTAD
RYAN G. WELDON
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 3447
Great Falls, Montana 59403-3447
Phone: (406) 761-7715
FAX: (406) 453-9973
Email: Carl.Rostad@usdoj.gov
Ryan.Weldon@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. SHAD JAMES HUSTON, K & N CONSULTING, LLC, and TMP SERVICES, LLC, Defendants. | CR 13-98-GF-BMM<br><br>MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL |
|---|---|

The Court this day rejected all plea agreements and set the remaining counts for trial on May 4, 2015. If Shad Huston and K&N Consulting elect to not withdraw their guilty pleas, then the trial will only be on the remaining counts. If the guilty pleas are withdrawn, then trial will take place on all counts.

1

Comes now the United States, by and through its counsel, Carl E. Rostad and Ryan G. Weldon, Assistant U.S. Attorneys for the District of Montana, and moves this Court for an order disqualifying Michael J. Sherwood and the Sherwood Law Firm as counsel for SHAD JAMES HUSTON, K & N CONSULTING, LLC, and TMP SERVICES, LLC. This motion is made on the grounds that Mr. Sherwood previously represented John Chance Houle, who will be a material witness, at trial, against the defendants thereby creating a conflict that precludes Sherwood's continued representation of Shad Huston, and his two co-defendant companies (hereinafter the Huston defendants).

**BACKGROUND:**

**I.    History of Representation.**

John Chance Houle was indicted as a defendant in *United States v. Belcourt, et al*, CR-13-39-GF-BMM, on April 18, 2013. Michael Sherwood appeared as counsel for Houle on May 7, 2013. CR-13-39-GF-BMM, Doc. 31. Mr. Sherwood represented Houle throughout the litigation until the United States dismissed the case against Houle on August 30, 2013. CR-13-39-GF-BMM, Doc. 86.

The Huston defendants were indicted on October 18, 2013, in the case of *United States v. Belcourt, et al*, CR-13-98-GF-BMM. Michael Sherwood appeared as counsel for all three of the Huston defendants on October 29, 2013. Doc. 18. Mr. Sherwood has represented Huston and the defendant companies since that time.

On June 19, 2014, John Chance Houle was subsequently indicted on other public corruption indictments. *United States v. Houle*, CR-14-45-GF-BMM (Bribery and Obstruction of Justice); *United States v. Houle and Colliflower*, CR-14-49-GF-BMM (Embezzlement and Theft); and, *United States v. Houle, et al*, CR-14-50-GF-BMM (Embezzlement, Theft, and Obstruction of Justice). On August 11, 2014, the government and Houle reached a plea agreement for the resolution of cases pending against him. Houle agreed to cooperate with the United States in return for consideration of a USSG §5K1.1 motion that could reduce his sentencing calculation under the advisory sentencing guidelines. In doing so, he agreed to be a witness against Huston on the allegations found in this case, and which is currently set for trial on May 4, 2015.

**II.     Anticipated Proof at Trial.**

A portion of the charges—and the most serious allegation in the Superseding Indictment—involves a late December 2011 transaction involving $300,000 in insurance money from the Chippewa Cree Tribe which, it is alleged, was embezzled by tribal leaders to enrich Tony Belcourt ($200,000), and to a lesser extent the tribal officials who approved the payment. Those tribal leaders are Chairman Bruce Sunchild ($25,000) and Vice Chairman John Chance Houle ($12,500).

In addition to his role at the Chippewa Cree Construction Corporation, and as the incident commander for the Tribe's response to the floods of 2010, Tony

Belcourt and his wife, Hailey, operated a cattle ranch on the Rocky Boy's Indian Reservation. In November and December of 2011, the Belcourts purchased a significant number of cattle from central Montana producers. By the middle of December, their checking account was overdrawn by more than $250,000.

Prior to December 22, 2011, Belcourt had told tribal leaders that he believed he was entitled to a significant share of insurance proceeds for his role in getting the insurance company to pay out a larger proceed than originally offered. Two meetings were held and at both Belcourt's request were opposed. However, at some point an invoice was circulated for an insurance payment to K & N Consulting in the amount of $300,000. Houle will testify that he signed because the Chairman, Bruce Sunchild, had already signed, even though he knew that K & N Consulting was not entitled to any payment and that this was a way to get $200,000 to Tony Belcourt.

On December 22, 2011, K & N Consulting received and deposited a cashier's check in the amount of $300,000 from the Chippewa Cree Tribe. An internal tribal document reflects that Tony Belcourt approved the disbursement for "claim prep" by K & N Consulting. The funds were drawn on the Tribe's bank account utilized for the Insurance Fund settlement monies. No other supporting records or documents—such as invoices, itemized billing, receipts, pay requests, evidence of costs incurred or disbursements made for the work, or any other kind of standard

4

supporting documentation—was found in a search of tribal records by employees of the Tribe. The single record that does exist shows that the payment was signed-off on by Sunchild, Belcourt, and Tribal Councilman Ted Whitford, all members of the Insurance Recovery Team, and the Vice-Chairman of the Business Committee, John Chance Houle.

K & N Consulting issued a $200,000 check from its business account to Tony Belcourt—noted as "consulting services" and dated December 20—which Belcourt deposited on December 23, the day following the tribal payment to K & N Consulting. On December 22, 2011, Huston also obtained a $100,000 cashier's check payable to Tony Belcourt from his checking account, which Belcourt also deposited into his personal checking account on December 23, 2011.

With the remaining $100,000 from the insurance money, Huston used $12,500 to pay Houle's bill at Tilleman Motors, another $26,000 so that the title on Belcourt's Suburban could be cleared and transferred to Sunchild's daughter, and another $20,000, in cash, to Gordon Whitford, the brother of Ted Whitford.

**ARGUMENT:**

The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel unburdened by conflicts of interest. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A necessary corollary to the right to effective assistance of counsel is the right to representation free from conflicts of

interest. *See, e.g.*, *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *United States v. Ramsey*, 661 F.2d 1013, 1017 (4th Cir.1981). As this Circuit wrote in *United States v. Elliot*, 463 F.3d 858, 867 (9th Cir.2006), "[f]ew aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest." *Id*., (*citing United States v. Henke*, 222 F.3d 633, 638 (9th Cir. 2000) (*per curiam*)); *Bonin v. California*, 494 U.S. 1039, 1044 (1990) (Marshall, J., dissenting) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial.").

Thus, while there is a presumption in favor of a defendant's counsel of choice, *United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 2561 (2006), "that presumption may be overcome not only by a demonstration of actual conflict of interest but by a showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988). Determining whether a conflict exists "must be left primarily to the informed judgment of the trial court." *Id*. As for the prejudice requirement, "[w]hen counsel for a defendant in a criminal case has an actual conflict of interest when representing the defendant and the conflict adversely affects counsel's performance in the defense of the defendant, prejudice to the

defense is presumed," thus entitling the defendant to a new trial or sentencing. *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir.1991); *see also Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). And it has even been said that such an actual conflict of interest may never be harmless error. *See Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467–68, 86 L.Ed. 680 (1942).

Counsel's conundrum is patently apparent if he is allowed to represent the Huston defendants. Having represented Houle, and presumably shared his confidences about the details of the case, he cannot examine Houle unfettered without revealing those confidences. And if he restrains his questioning to preserve Houle's confidences, how can he zealously represent Huston? Historically, when a former client becomes a Government witness against the attorney's new client, courts have been primarily troubled by the prospect of an attorney being torn between his duty of confidentiality to his former client and his duty of loyalty to his new client. *See, e.g.*, *Nix v. Whiteside*, 475 U.S. 157, 188 fn. 7, (1986); *United States v. Sanchez Guerrero*, 546 F.3d 328, 334–35 (5th Cir.2008); *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir.1975).

Here, Houle is an eye-witness and participant in the events that are the foundation of the allegations against Huston. Mr. Sherwood is obligated to zealously test Houle's credibility and impeach him as a witness, yet an equally

important ethical obligation to preserve Houle's confidences that were shared during the months of his representation of Houle. An actual conflict of interest exists when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or to a course of action," or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client. *United States v. Feyrer*, 333 F.3d 110, 116 (2d Cir. 2003). Counsel has obligations to both Houle and Huston, which cannot coexistent. *See United States v. Basham*, 918 F.Supp.2d 787, 795-796 (C.D. Ill. 2013) (in production of child pornography prosecution, defendant's counsel's prior representation of defendant's co-defendant, whom the government planned to call as a witness at the defendant's trial, created an actual conflict of interest requiring his disqualification as defendant's counsel).

Mr. Sherwood cannot represent the Huston defendants going forward.

Dated this 12th day of March, 2015.

    MICHAEL W. COTTER
    United States Attorney


    /s/ Carl E. Rostad
    CARL E. ROSTAD
    Assistant U.S. Attorney
    Attorney for Plaintiff


    /s/ Ryan G. Weldon
    RYAN G. WELDON
    Assistant U.S. Attorney
    Attorney for Plaintiff